IN RE APPLICATION OF ROGERS.

[Cite as *In re Application of Rogers,* 119
Ohio St.3d 43, 2008-Ohio-3191.]

(No. 2008–0805—Submitted June 4, 2008—Decided July 3, 2008.)

———

**Per Curiam.**

{¶ 1} Applicant, Kevin Vaughn Rogers Jr. of Sandusky, Ohio, has applied to take the February 2007, July 2007, and February 2008 Ohio bar examinations. Because of the applicant's poor credit record and history of criminal and other transgressions, the Board of Commissioners on Character and Fitness recommends that we disapprove his character, fitness, and moral qualifications and then allow him to reapply for the July 2008 bar exam. We accept the board's recommendation to disapprove; however, because we continue to have reservations about the applicant's integrity and maturity, we will not allow the applicant to apply for the July 2008 bar examination.

{¶ 2} The applicant registered as a candidate for admission to the Ohio bar in August 2006. After his first application to take the bar exam, members of the

Erie County Bar Association Admissions Committee interviewed him pursuant to Gov.Bar R. I(11)(C)(3) but did not give their unqualified approval of his character, fitness, and moral qualifications. On the applicant's appeal, see Gov.Bar R. I(12)(C), a three-member panel of the board heard the case and recommended against the applicant's immediate approval, but also recommended that he be permitted to reapply for the July 2008 bar exam on conditions. The board adopted the panel's findings and recommendation.

{¶ 3} Since the board filed its report in this court, the parties have stipulated to the board's findings and recommendation, waived oral argument, and asked for our expedited disposition. We deny the motion to expedite but accept the stipulations.

## I. Summary of Panel and Board Findings

{¶ 4} The panel conducted hearings on June 29 and October 9, 2007. In adopting the panel's report, the board identified two areas of concern about the applicant's past. The first was the applicant's poor credit history; the second was the applicant's criminal record and other transgressions.

### A. The Applicant's Credit Problems

{¶ 5} Without going into unnecessary detail, we note that the applicant, who is now in his late twenties, has had credit card debt going back to his college years. In his second year of law school, however, he obtained employment, and since then has tried to locate creditors and pay off the debts he incurred over the years. He has not been entirely successful, and his interviewers for the bar admissions committee were less than impressed with his efforts.

{¶ 6} The board concluded that the applicant's credit history warranted initial disapproval of his character, fitness, and moral qualifications but should not preclude him from reapplying for the July 2008 bar exam. The board explained:

{¶ 7} "Regarding the applicant's unpaid debt, the fact that many of the debts were old and unpaid was of greater concern than the total amount of the debt. The panel concurred with the interviewers that the applicant seemed to dance around the reasons the debts were not paid and the efforts he had made to pay them. On the other hand it is to his credit that he has made some effort to pay some of the debts even though they were charged off."

### B. The Applicant's Criminal Record and Other Transgressions

#### 1. Criminal Record

{¶ 8} In addition to two minor traffic violations, the applicant's criminal record includes a charge for driving under the influence of alcohol, which was ultimately dismissed. The applicant, who was 19 years old at the time, had been to a rock

concert in Pittsburgh, Pennsylvania, before which he had consumed as many as 12 beers. He was stopped at 2:00 a.m. while trying to drive back to Sandusky, Ohio. The applicant disclosed this incident in his application materials, but because his breath-alcohol level was still .106 supposedly six hours after his last drink, the admissions committee interviewers suspected his candor as to when and how much he had actually had to drink.

{¶ 9} The board concluded that this drunk-driving charge warranted initial disapproval of the applicant's qualifications but should not preclude him from reapplying for the July 2008 bar exam. The board explained:

{¶ 10} "His explanation regarding the interviewers' impression was that he probably badly articulated what happened that night, leading to the inconsistency between how many beers he may have drunk and when he drank them. He also claimed that, regardless of how much he did or did not have to drink, he does not view the issue as how much he had to drink but the fact is that he drank intending to drive home and should not have. He admitted he was in the wrong state of mind and acknowledged it. His [remark] about the incident being a special event was the fact that it occurred on the Fourth of July. He said that this was not an excuse to drink or to explain his bad behavior but rather an effort to explain to the admissions committee that this was a one-time event and not something that has occurred over and over again. The fact that this may have been a one-time incident is borne out by the reports from the police departments in [his application materials] which indicate no other arrests for any other drug or alcohol–related incidents."

{¶ 11} Also a part of the applicant's criminal record is the fact that he pleaded no contest to a misdemeanor charge of sexual imposition and completed a diversion program in lieu of conviction. The incident that led to this charge occurred when the applicant, then 18 years old, went with two female co-workers to their apartment after drinks with a larger group. The applicant disclosed this incident and the charge in his application materials, but the admissions committee interviewers worried that he did not fully acknowledge or appreciate the gravity of his wrongdoing.

{¶ 12} The board again concluded that the improprieties of this situation warranted initial disapproval but should not preclude the applicant from reapplying for the July 2008 bar exam. The board explained:

{¶ 13} "It should be noted that he did not contest any evidence leading to the finding of guilt on his no contest plea to the misdemeanor and waived presenting evidence. He did claim to take full responsibility for bad judgment. He said it was bad judgment on his part to go to that room, to try to fool around with two girls, and to put himself in that position. He pointed out that * * * there have

been no further arrests (other than the OVI) in the 7 years since this incident, during which time he has been to college and law school.

{¶ 14} "The applicant was admitted to law school despite this incident. He disclosed to the law school the same information he disclosed on his admissions application. The law school, as per its policy, put him on immediate disciplinary probation, meaning if he made one mistake he would be discharged. He graduated from law school in the top 15% of his class."

### 2. Other Transgressions

{¶ 15} Again without going into unnecessary detail, we note that the applicant has shown signs of being unable to appropriately manage his behavior in certain situations. In several instances brought to the board's attention, the applicant victimized a woman with conduct ranging from loutish to threatening in apparent attempts to keep or regain her affection. In one incident, the applicant went to the woman's apartment at 4:00 a.m. and pounded on her door for 20 minutes while spewing epithets. In another incident, the applicant threw a half-filled can of beer at the woman and had to be escorted away. The applicant also once damaged the woman's window blinds in a fit of anger.

{¶ 16} Despite the applicant's volatility toward her, the woman testified that she has never been afraid of him, harbored no ill-will, and believed that he would be a good lawyer. The panel expressed concern about the applicant's tendency to deny and evade responsibility for his violent reactions, and the board shared that sentiment. Both the panel and the board concluded, however, that the applicant should still have the opportunity to reapply for the July 2008 bar exam.

## II. Disposition

{¶ 17} An applicant to the Ohio bar must prove by clear and convincing evidence that he or she "possesses the requisite character, fitness, and moral qualifications for admission to the practice of law." Gov.Bar R. I(11)(D)(1). The applicant's record must justify "the trust of clients, adversaries, courts, and others with respect to the professional duties owed to them." Gov.Bar R. I(11)(D)(3). Necessarily, "[a] record manifesting a significant deficiency in the honesty, trustworthiness, diligence, or reliability of an applicant may constitute a basis for disapproval of the applicant." Id.

{¶ 18} The panel, board, and the parties agree that the applicant should be permitted to reapply to take the July 2008 bar exam. Respondent, however, has demonstrated two of the specified disqualifying characteristics for bar admission. He has shown some reluctance to be forthcoming about elements of his past, and he has neglected financial responsibilities. See Gov.Bar R. I(11)(D)(3)(g) and (k). Moreover, though years ago, respondent has serious wrongdoing in his past, as

shown by the charges of DUI and sexual imposition. See Gov.Bar R. I(11)(D)(3)(f).

{¶ 19} For these reasons, we continue to have misgivings about the applicant's worthiness for admission to the practice of law. Thus, rather than allow him to immediately reapply for the bar exam, we are allowing him more time to show improvement in the areas of candor, financial responsibility, and lawful conduct. We therefore disapprove, for now, the applicant's character, fitness, and moral qualifications for admission to the Ohio bar; however, he may reapply, in accordance with Gov.Bar R. I(3), to take the bar examination to be administered in February 2009. In reapplying, the applicant must receive the unqualified approval of the Erie County Bar Association Admissions Committee.

Judgment accordingly.

MOYER, C.J., and PFEIFER, LUNDBERG STRATTON, O'CONNOR, O'DONNELL, LANZINGER, and CUPP, JJ., concur.

_____

Kevin Vaughn Rogers Jr., pro se.

Murray & Murray Co., L.P.A., and James L. Murray, for the Erie County Bar Association.