IN RE APPLICATION OF GRACHANIN.

[Cite as *In re Application of Grachanin,*

**122 Ohio St.3d 537, 2009-Ohio-3605.]**

*Attorney at law — Character-and-fitness review — Applicant may apply to take February 2011 bar examination.*

(No. 2009-0511 — Submitted May 19, 2009 — Decided July 29, 2009.)

ON REPORT by the Board of Commissioners on Character and Fitness of the Supreme Court, No. 400.

_____

**Per Curiam.**

{¶ 1} On February 7, 2008, Stephen Matthew Grachanin of Akron applied for registration as a candidate for admission to the bar of the state of Ohio, and on April 2, 2008, he applied to sit for the Ohio bar examination in July 2008. Those applications contained information bearing on the applicant's character and fitness to practice law. That information included references to two civil lawsuits, numerous reports of past-due debts, and nine instances of criminal charges that included a disorderly conduct charge, a charge of operating a motor vehicle while intoxicated ("OMVI"), and several traffic citations. Because he lacked final approval with respect to character and fitness, the applicant was not permitted to sit for the July 2008 bar examination.

{¶ 2} On September 2, 2008, the board ordered sua sponte an investigation of the applicant's character and fitness by a panel. After holding a hearing on January 30, 2009, the panel issued amended findings of fact and a recommendation on April 1, 2009. Noting among other things that the applicant had successfully completed a two-year Ohio Lawyers Assistance Program ("OLAP") contract while expressing continuing concerns, the panel

recommended that the applicant not be seated at the February 2009 bar examination, but that he be permitted to apply to sit for the February 2011 bar examination, at which time he would be required to establish his continued progress.

**{¶ 3}** The board adopted the panel's findings and recommendation with one modification. The board recommendation would permit the applicant to sit for the February 2010 bar examination. The applicant has filed no objections to the board's recommendation.

**{¶ 4}** We adopt the board's amended findings and recommendation but accept the panel's recommendation that the February 2011 bar examination be the earliest bar examination for which the applicant may reapply.

### Background

**{¶ 5}** The incidents that have called the applicant's character and fitness into question appear to relate to his alcoholism. The applicant was born in September 1981 and took his first alcoholic drink the day he graduated from high school in 1999. Pursuant to his entry into alcoholism treatment, the applicant testified that he took his last drink on July 13, 2006. The course of the applicant's troubling conduct includes three suicide attempts in April and May 2006.

**{¶ 6}** The applicant graduated first in his high school class and attended the University of Akron as an undergraduate from 1999 through 2003, when he received his Bachelor of Arts in political science. He graduated with a 4.0 grade point average, was admitted to the University of Akron School of Law, and began his legal studies in August 2003.

**{¶ 7}** The record shows seven traffic violations stretching from 1998 to 2005, at least one resulting from alcohol consumption. In particular, the applicant was convicted in 2005 on a plea of no contest to an OMVI charge that involved erratic driving. Other criminal charges include a disorderly conduct conviction

associated with an incident involving an argument and injury with a knife; this incident was associated with one of the applicant's suicide attempts.

{¶ 8} The applicant's alcoholism also led to problems with employment. He was terminated from one job for tardiness and operating a vehicle while intoxicated. Another employer discharged him for tardiness and his continued traffic violations.

{¶ 9} The applicant's status as a student, his alcoholism, and his employment problems have also contributed to his incurring a number of debts that he later proved unable to repay. These included $12,000 of credit-card debt on various cards as of the time the application was filed, along with unpaid utility and medical expenses. By the hearing date, the applicant had filed for bankruptcy. The applicant has also struggled to make payment on student loans; the bankruptcy petition shows approximately $164,000 in student loans outstanding.

{¶ 10} Finally, he failed to update the university with respect to the various criminal charges against him during law school. The applicant argued that the deans were on notice of most of the violations, and he received a reprimand from the university. One of the deans recommended that the applicant enter OLAP.

{¶ 11} At the hearing, the applicant expressed remorse in connection with his criminal violations and alcoholism and spoke of efforts to pay off his debts over time. The applicant has one child by a former girlfriend, as to whom he initiated proceedings to prove his paternity, and he makes a substantial child support payment each month. He is now married, and at the time of the hearing, he and his wife were expecting a child.

{¶ 12} As noted, the applicant entered into a two-year OLAP contract requiring him to abstain from alcohol use, contact his counselor regularly, submit to drug tests, and attend Alcoholics Anonymous meetings. An associate director

of OLAP, Paul A. Caimi, certified that as of May 1, 2008, the applicant had complied with the contract. At the hearing, the applicant's Alcoholics Anonymous sponsor offered testimony that the applicant had done "miraculously well" in the recovery program.

## Disposition

{¶ 13} On the basis of the record, the board found evidence of a past but recent chemical dependency and a pattern of misconduct. Taking all factors into account, the board concluded that the applicant should be disapproved for the February 2009 bar examination.

{¶ 14} Relying on the applicant's completion of his OLAP contract and ongoing efforts to improve his circumstances, the panel recommended that the applicant be permitted to apply for the February 2011 bar examination, provided that further review showed he was making continued progress. The board amended the panel recommendation by concluding that the applicant should be permitted to sit for the February 2010 bar examination.

{¶ 15} We agree with the recommendation by the panel that the applicant should be permitted to apply for the February 2011 bar examination. At the time of the hearing, the applicant was making progress but was still engaged in the process of putting his life in order. He deserves credit for developing insight into and remorse for his misconduct and for completing two years of an OLAP contract. But the gravity of that misconduct, involving as it does violations of specific provisions of Gov.Bar R. I(11)(D)(3)(b) (evidence of alcohol dependency), (f) (pattern of disregard of the laws of this state), and (k) (neglect of financial responsibilities), persuades us that the applicant needs more time to demonstrate improvement. See *In re Application of Rogers*, 119 Ohio St.3d 43, 2008-Ohio-3191, 891 N.E.2d 736, ¶ 18, 19 (specific violations, including neglect of financial responsibilities, justified delaying permission to sit for the bar examination). We therefore disapprove for now the applicant's

character and fitness for admission to the Ohio bar; however, he may reapply to take the bar examination that will be administered in February 2011. In reapplying, the applicant must undergo further review to assure his continued progress. In all other respects, we adopt the findings of the board.

Judgment accordingly.

MOYER, C.J., and PFEIFER, LUNDBERG STRATTON, O'CONNOR, O'DONNELL, LANZINGER, and CUPP, JJ., concur.

_____

Perantinides & Nolan Co., L.P.A., and Michael J. Maillis, for applicant.

Virginia Robinson, for Akron Bar Association.

_____